IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 11, 2009 Session

## MENDY JOAN HAGLER v. JOEL SCOTT HAGLER

**Direct Appeal from the Circuit Court for Bradley County**
**No.  27257      Hon. John B. Hagler, Circuit Judge**

---

**No. E2007-02609-COA-R3-CV  - FILED MARCH 31,  2009**

---

In this divorce case the Trial Judge granted the parties a divorce and divided the marital estate.  The husband appealed on the grounds that a house awarded to the wife was not a marital asset, and otherwise questioned the property and division of the indebtedness of the marital estate.  On appeal we affirm, as modified, the modification being that the evidence preponderates against the Trial Judge finding that the father had awarded his son a collection of firearms.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and J. STEVEN STAFFORD, J., joined.

Phillip M. Jacobs, Cleveland, Tennessee, for appellant, Joel Scott Hagler.

H. Franklin Chancey, Cleveland, Tennessee, for appellee, Mendy Joan Hagler.

**OPINION**

In this divorce action, the wife filed a Complaint alleging that she and defendant husband had been married since 1996, and they had one child, Knox Hagler, d.o.b. 7/24/91, whom the husband had legally adopted after the parties' marriage.  She alleged grounds of irreconcilable differences, and that she was the proper person to be primary residential custodian of the child.

The husband responded with a Motion for Contempt, alleging that the wife was guilty of violating the mutual automatic temporary injunction that prohibited the parties from transferring or concealing marital property. The wife then filed a Petition for Contempt asserting that the husband

was supposed to be paying $782.00 per month in temporary child support, but had failed to do so. The husband then filed an Answer and Counter-Complaint, admitting that the parties had irreconcilable differences, and admitting that wife should be primary residential custodian of the child.

Following the trial, the Court entered a Final Decree on August 23, 2007, and found that the most important issue in the case was the future of the minor child, and that it was up to the husband to repair his relationship with the child. The Court held the husband in contempt for failing to pay child support after the Order of March 2, 2007, because he had the ability to pay but failed to comply with the Court's Order. Further, the Court said that there was insufficient evidence that the wife violated the mandatory injunction regarding disposal of personal property, and then held that the Calhoun property was a classic case of transmutation, because it was transferred to the husband for the purpose of being a marital residence for the parties, and the wife contributed to it and helped improve and preserve its value. The Court found that the Cleveland property was the husband's separate property, but the wife would have an interest in its appreciation because she was obligated on the mortgage and helped make the payments. The Court held that the husband had an earning capacity of 2 ½ times that of his wife.

The Court held the wife would be the primary residential custodian of the parties' child, and the husband could have co-parenting time as the parties could work out, and the Court ordered the husband to pay child support based on 80 days' visitation per year, with his income to be set at $3,712.00 per month, and the wife's set at $1,208.00 per month.

At the time of the entry of the Final Decree, the husband had purged himself of the contempt for failing to pay temporary child support.

The Court awarded the wife the Calhoun property, shop and trailer, the Corvette, Chevrolet Van, and certain other items of personal property. The Court awarded the husband the Cleveland property, a truck, a Volkswagen, a 1993 Chevrolet, a Blazer, and many items of personalty and tools. The Court awarded the child a 38 pistol, a 30/30 rifle, a 45 revolver, a bike, an S-10 pick up, a computer and desk, and a four-wheeler.

On post trial motions, the Court amended the Final Decree by awarding the S10 pick up truck to the husband rather than to the child, and held the husband in contempt of the Court's prior Order, and ordered the husband to pay the wife $7,000.00 for the value of the Corvette, which the husband had sold. The Court also awarded the wife a judgment of $2,583.00 for the cost of cleaning up the Calhoun property.

The husband filed a Motion to Stay, asking the Court to stay its Order regarding the transfer of property, specifically, regarding the guns. The Court entered an Order staying transfer of the guns, and acknowledged that an error could have been made regarding whether the guns were a completed gift to the minor child.

The husband filed a Statement of Evidence which the Trial Court approved.

The issues on appeal are:

1.      Did the Trial Court err in finding that the firearms were gifts to the minor child in its award?

2.      Did the Trial Court err in finding that the Calhoun property was a marital asset?

3.      Did the Trial Court err in its property division?

4.      Did the Trial Court err in ordering husband to pay one-half of the debt on the son's four-wheeler, which was a gift from the wife and her mother to the son?

The husband argues that the Trial Court erred in awarding the guns to the minor child, because there was no intent to transfer ownership and no delivery, as the husband never relinquished dominion and control over the guns. The wife argues that simply because the guns were kept in a locked safe, this does not mean the husband did not intend for the guns to belong to the son.

Issues of fact are reviewed *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise. *Wood v. Lowery*, 238 S.W.3d 747 (Tenn. Ct. App. 2007). The Trial Court found the guns were a gift to the minor child, although it later questioned whether the gift was properly delivered. The husband testified that he did not intend to give the guns to the child, but only to let him use them, and that he never relinquished dominion and control over the guns. The wife and son testified that the guns were given to the son, that they were kept in a locked safe but were always referred to as "Knox's guns" by the husband, and that the husband would always say "let's get out your guns" and then father and son would get the guns out together.

Both parties admit that for a gift to be effective, there must not only be the intention to give, but also there must be delivery of the gift, which is shown by complete dominion and control over the gift being surrendered by the donor. *Hansel v. Hansel*, 939 S.W.2d 110 (Tenn. Ct. App. 1996); *Fritz v. Fritz*, 2002 WL 979030 (Tenn. Ct. App. May 13, 2002); *Hill v. Hill*, 1989 WL 51626 (Tenn. Ct. App. Aug. 7, 1989). In this case, the evidence preponderates that the husband never relinquished complete dominion and control over the guns to the son. The evidence was undisputed that the guns were kept in a locked safe and that the son did not have access to them without the husband's permission and supervision. We hold the Trial Court erred in finding that the guns were a gift to the son, as the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

The husband next argues the Trial Court erred in finding that the Calhoun property was marital due to transmutation, because the evidence showed that the property was transferred to the husband solely, from his parents, and it was not put in both names. The wife argues the property

was marital, as it was given to them with the intent to be used as a marital residence, and her efforts helped maintain and improve it.

The property was deeded to the husband by his parents, and both parties admitted that it was a gift. As such, it would be considered the husband's separate property pursuant to Tenn. Code Ann. §36-4-121. The courts of this State, however, have recognized that separate property may become marital property by transmutation, if it is "treated in such a way as to give evidence of an intention that it become marital property". *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). This Court has explained that:

> Four of the most common factors courts use to determine whether real property has been transmutated from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property.

*Fox v. Fox*, 2006 WL 2535407 (Tenn. Ct. App. Sept. 1, 2006)(citations omitted).

In this case, the property was never titled jointly, but the evidence supports the Trial Court's conclusion that this property should be treated as marital. The evidence demonstrated that the parties used this property as the marital residence, and the wife contributed both her time and her earnings to the maintenance and improvement of the property. The evidence shows that this property was intended to be part of the marital estate, and the evidence does not preponderate against the Trial Court's findings.

The husband argues that the property division in this case was inequitable, because he was given 98% of the marital debt and only 41% of the marital property. The wife argues that the actual division was 67.5% of the marital property to the husband and 93% of the marital debt. The division was clearly weighted in the wife's favor based on the debts. The Trial Court did specifically find, however, that it was equitable to divide the property in such a way because the husband's earning capacity was nearly three times that of the wife, which would clearly give him greater ability to make future acquisitions of assets, and because the wife contributed to the assets with her earnings and efforts. Taking into account the statutory factors, the evidence does not preponderate against the Trial Court's findings and its division of property and debt, which we conclude is equitable on the evidence in this case.

Finally, the husband argues that the Trial Court erred in ordering him to repay half of the cost of the son's four-wheeler, as it was a gift from the wife and her mother. The wife testified, however, that the husband discussed this gift to the son with the wife, agreed to purchase the same for the son, but the debt later had to be refinanced and the note was only signed by the wife and her mother. The Trial Court credited the wife's testimony on this issue, and the evidence does not preponderate against this finding. The Trial Court is the best judge of witness credibility, and the Trial Court's findings with regard to the same will not be overturned unless there is clear and convincing evidence to the contrary. *In re Estate of Price*, 273 S.W.3d 113 (Tenn. Ct. App.2008)

In sum, we affirm the Judgment of the Trial Court, as modified to award the gun collection to the father.

The Judgment of the Trial Court is affirmed, as modified, and the cost of the appeal is adjudged one-half to Mendy Joan Hagler and one-half to Joel Scott Hagler.

_____
HERSCHEL PICKENS FRANKS, P.J.